UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KEIBER RAFAEL AZUAJE-GAMEZ,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, NORTHWEST ICE PROCESSING CENTER et al.,<br><br>Respondents. | CASE NO. 2:26-cv-02988-JHC<br><br>ORDER |

## I

## INTRODUCTION

This matter comes before the Court on Keiber Rafael Azuaje-Gamez's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court has reviewed the materials filed in support of and in opposition to the Petition, the rest of the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the Petition. Dkt. # 1.

## II

## BACKGROUND

Petitioner is a native and citizen of Venezuela. Dkt. # 12 at 2. Authorities encountered him near El Paso, Texas on September 20, 2022. Dkt. # 12 at 2. He was immediately detained

and, the next day, he was issued a Notice to Appear (NTA) charging him as inadmissible and paroled into the United States as an alternative to detention.[1] Dkt. # 12 at 2.

On June 8, 2023, Petitioner filed an application for relief with the United States Citizenship and Immigration Services (USCIS), which remains pending. Dkt. # 12 at 2.

On July 22, 2026, Petitioner reported to a local Immigration and Customs Enforcement (ICE) office in Florida for his scheduled check in. Dkt. # 12 at 2; Dkt. # 1 at 2-3, 28; Dkt. # 1-1 at 2. Upon Petitioner's arrival, ICE informed him that he did not have lawful status and determined that he had violated the terms of his parole.[2] Dkt. # 1 at 27-29. ICE issued Petitioner a new NTA and re-detained him. Dkt. # 12 at 2. The next day, he was transferred to the Krome North Service Processing Center in Miami, Florida, and he was later transferred to the Northwest ICE Processing Center in Tacoma, Washington where he remains. Dkt. # 12 at 3.

Petitioner's removal proceedings before the immigration court remain pending. *See* Dkt. # 12 at 3-4.

---

[1] The parties dispute whether Petitioner is detained subject to 8 U.S.C. § 1225(b) or § 1226(a). Because the Court grants the Petition on due process grounds that would apply to noncitizens released on parole under either statute, the Court need not decide this issue. *See Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1133 (W.D. Wash. 2025) (granting relief on procedural due process grounds related to a re-detention of a petitioner detained under § 1225(b)); *Alvarez v. Warden Nw. ICE Processing Ctr.*, 2026 WL 2718366, at *1 n.1 (W.D. Wash. Sept. 15, 2026) (granting relief on procedural due process grounds related to a re-detention of a petitioner detained under § 1226(a)).

[2] It is unclear from the record what was the alleged parole violation. *See* Dkt. # 1 at 27-29 (Record of Deportable/Inadmissible Alien dated July 22, 2026). Respondents say Petitioner's parole authorization ended on November 22, 2022. *See* Dkt. # 10 at 4 (stating Petitioner's parole "automatically terminated on November 22, 2022, when his parole expired"); Dkt. # 12 at 2 (same). No contemporaneous record supports this assertion. *See generally* Dkt. # 1, 11, 12. Also, the undisputed fact that Petitioner was appearing for a scheduled check-in when he was re-detained suggests that no such violation for failure to appear occurred. *See* Dkt. # 1 at 27-29.

## III

## DISCUSSION

Federal district courts have the authority to grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241 (a), (c). "The petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

Petitioner says that his re-detention without the opportunity to be heard violates the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person "of life liberty, or property, without due process of law[.]" Dkt. # 1 at 2, 5. The right to due process "applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates due process:

> [G]enerally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

The traditional test for evaluating due process claims established by *Mathews*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).[3]

A. Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

Petitioner has a liberty interest in being free from detention. *See* Dkt. # 1 at 1, 3; *see also* Dkt. # 10 at 6 (Respondents recognizing the weighty liberty interest). Even conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also Bd. of Pardons v. Allen*, 482 U.S. 369, 377-81 (1987) (recognizing that governmental action can create a liberty interest protected by the Due Process Clause); *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982) (same); *see also*

[3] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test, but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention. 53 F.4th at 1207. In applying the *Mathews* test, the Court recognized that other circuits have applied the *Mathews* test to due process challenges to immigration proceedings. *Id.* at 1206. The Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings." *Id.* And the Supreme Court has applied *Mathews* in a due process challenge to an immigration exclusion hearing. *Id.*; *see Landon v. Plasencia*, 459 U.S. 21 (1982). More recently, courts in this District have repeatedly applied *Mathews* to evaluate noncitizens' due process challenges to re-detention decisions. *See*, *e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention and collecting cases that employ this test in the context of immigration detention); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1135 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention); *Kumar v. Wamsley*, 2025 WL 2677089, *2-3 (W.D. Wash. Sept. 17, 2025) (same); *Ledesma Gonzalez v. Bostock*, 2025 WL 2841574, *7-8 (W.D. Wash. Oct. 7, 2025) (same); *Tzafir v. Bondi*, 2025 WL 3724708, *2-4 (W.D. Wash. Dec. 24, 2025) (same). The Court likewise applies the *Mathews* test here.

*Kumar*, 2026 WL 668335, at *4 ("District courts in the Ninth Circuit have also recognized that a 'petitioner's liberty interest [does] not expire along with his parole.'").

The interest is only strengthened by the government's decision to release Petitioner. *See Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1082 (N.D. Cal. 2025) ("Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that she will be re-detained only if she violates the conditions of her release.") (citing *Morrissey*, 408 U.S. at 482). Petitioner was free from detention for almost four years. Dkt. # 1 at 1; Dkt. # 12 at 2. This is enough time to "gain[ ] a foothold in the United States" and "develop ties in this country," thereby strengthen his interest in being free from detention. *Pablo Sequen v. Albarran*, 800 F. Supp. 3d 998, 1009 (N.D. Cal. 2025) (first quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); and then quoting *Landon*, 459 U.S. at 32-33) (cleaned up).

While free from detention, Petitioner worked lawfully with employment authorization, had a social security card, and a valid Florida driver's license. Dkt. # 1 at 1, 15-20. He has no criminal history, and he says he complied with ICE supervision. *See* Dkt. # 1 at 1. Still, Petitioner was re-detained and removed from his home of nearly four years in Florida and transferred across the country to Washington without notice or an opportunity to be heard. Dkt. # 12 at 3. In revoking Petitioner's release, the government has undeniably inflicted a "grievous loss" of Petitioner's liberty, thereby depriving him of a core private interest protected by the Due Process Clause. *See Morrissey*, 408 U.S. 471 at 482. Accordingly, the first *Mathews* factor favors Petitioner.

B. Risk of Erroneous Deprivation of Interest Through Procedures Used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of

additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335. Here, as Petitioner was arrested and immediately re-detained without any notice or opportunity to be heard when he appeared for his scheduled check-in, the risk of an erroneous deprivation of Petitioner's liberty interest is high. Dkt. # 1 at 1-2; Dkt # 12 at 2.

Respondents repeatedly say Petitioner's parole expired on November 22, 2022.[4] Dkt. # 10 at 4-7. As already explained, no information regarding parole revocation was provided to the Court. *See* Dkt. # 1, 11, 12. Petitioner says that he had complied and was appearing for his check ins. Dkt. # 1 at 1. This is supported by the Government's record, which states that on the day he was detained "Petitioner reported to the ERO Miramar, Florida office for a scheduled check in." Dkt. # 12 at 2. During the time Respondents allege Petitioner's parole was terminated, he received a social security card, state driver's license, and work authorization. *See* Dkt. # 1 at 15-20. Respondents' assumption, without any citation or support, that Petitioner's parole automatically expired (as is typical after 60 days where a parolee does not appear for their first check in) does not support a finding that Petitioner could be lawfully re-detained without notice or an opportunity to be heard. *See* Dkt. # 11-1 at 3; Dkt. # 1 at 19; *see also Pantoja Sanchez v. Scott et al.*, 2026 WL 2620522, at *5 (W.D. Wash. Sept. 4, 2026).

But even if the record clearly showed that Petitioner's parole had expired, "[m]ost courts in this District have rejected the Government's parole expiration argument" and expressed "skeptici[sm] that this automatic revocation without any notice to non-citizens comports with due process." *Pantoja Sanchez*, 2026 WL 2620522, at *5; *see also Espinoza Palacios v. Hermosillo*, 2026 WL 686138, at *8-9 (W.D. Wash. Mar. 11, 2026) (finding that "[t]he risk of

---

[4] Respondents at one point say Petitioner's parole expired in November 2024. Dkt. # 10 at 1. The Court assumes this was a clerical error.

erroneous deprivation is further highlighted here, where the Government has provided no documentation related to the revocation of Petitioners' release or their detention").

Respondents next say Petitioner has no due process right under the Constitution. Dkt. # 10 at 7 (*citing DHS v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020)). But courts have repeatedly found this argument to fail. *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1170-72 (W.D. Wash. 2023) (discussing *Thuraissigiam* and explaining the distinction between a challenge to admission and a challenge to detention); *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1106-07 (E.D. Cal. 2025) (same and explaining the "distinction between persons already located inside the United States, like petitioner, and persons attempting to enter the United States, like the petitioners in *Thuraissigiam*"); *see also Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to [detain] non-citizens is always constrained by the requirements of due process.").

Even more to the point, Respondents' argument fails because "the central issue here is the process by which re-detention occurred, not whether it was warranted." *Gill*, 2026 WL 686134, at *3. Petitioner says no procedures were used, the record shows the same, and Respondents do not dispute this claim or make any showing to the contrary. Dkt. # 1 at 13; *see generally* Dkt. # 4. The second factor thus favors Petitioner.

C. Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. There is a "heightened government interest in the immigration detention context." *Rodriguez Diaz*, 53 F.4th at 1206. The Court acknowledges that the government likely has an interest in "ensuring the appearance

of [noncitizens] at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690.

At the time he was re-detained, Petitioner had no criminal history, no final removal order, no upcoming removal proceedings, and he was appearing for his scheduled ICE check in. It is hard to rationalize any interest the Government might have in re-detaining him without notice or an opportunity to be heard. Thus, this *Mathews* factor also favors Petitioner. *E.A. T.-B.*, 795 F. Supp. 3d at 1324 ("the Government's interest in re-detaining non-citizens previously released without a hearing is low: although it would have required the expenditure of finite resources (money and time) to provide Petitioner notice and hearing on [release conditions] violations before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue").

* * *

In sum, all three *Mathews* factors favor Petitioner. The government's re-detention of Petitioner with insufficient notice and no opportunity to be heard violates the due process protections afforded to him by the Constitution. As a result, Petitioner has proven by a preponderance of the evidence that he "is in custody in violation of the Constitution or laws or treaties of the United States" and thus is entitled to habeas relief. 28 U.S.C. § 2241(c).[5]

As to the remedy, the Court finds that release is the appropriate remedy. Where, as here, a petitioner was re-detained without notice or a pre-deprivation hearing in violation of due process, the detention is "unlawful from its inception and typically requires immediate release." *K.G.M.Q. v. Bondi*, 2026 WL 962609, at *12 (W.D. Wash. Apr. 9, 2026); *Kirykovich v. Hernandez*, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) ("Because the constitutional

[5] Because Petitioner is entitled to habeas relief, the Court need not consider the remaining claims for relief. Dkt. # 1 at 5-6.

violation is the absence of *pre-deprivation* process, the proper remedy is to restore the status quo ante— that is, to return [the petitioner] to the conditions that existed before his unlawful detention.") (emphasis in original). As other courts in this District and Circuit have found, post-detention bond hearing would be an inadequate procedural safeguard because it would occur only after detention and thus fails to address an erroneous deprivation of liberty. *E.A. T.-B.*, 795 F. Supp. 3d at 1324 (*quoting Domingo v. Kaiser*, No. 25-cv-5893, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025)) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Ordering a hearing while the petitioner remains detained "would not adequately vindicate his rights; it would reward the government for detaining first and asking questions later." *Kirykovich*, 2026 WL 890459, at *4. Accordingly, the Court concludes that the appropriate remedy in this case is immediate release.

## IV
## CONCLUSION

For these reasons, the Court GRANTS the habeas petition (Dkt. # 1) and ORDERS that Petitioner be released from custody within 24 hours of this Order, subject to reasonable conditions of release. The Court further ORDERS that Petitioner shall not be re-detained until after a hearing before a neutral decisionmaker and adequate notice.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

//

//

//

Dated this 29th day of September, 2026.

John H. Chun
United States District Judge